COLE, Judge.
This case involves a former inmate of the East Baton Rouge Parish Prison suing for damages caused when he was allegedly forced to perform anal and oral intercourse with ten other inmates. The incidents occurred on September 22, 1977, when plaintiff Vernon Michaelman was confined to cell-block “BG” of the parish prison. Because of overcrowded conditions plaintiff and one other inmate were assigned to sleep in the “day room” while other prisoners were housed in individual cells.
Plaintiff originally brought suit against J. A1 Amiss, Sheriff of East Baton Rouge Parish; Rodger Aucoin, warden of the parish prison; the North River Insurance Company, liability insurer of Amiss and Aucoin; the State of Louisiana; and, the Parish of East Baton Rouge (hereinafter referred to as the Parish). Various third party demands were filed, including one by the Parish against Amiss, Aucoin and their insurer. Prior to trial, plaintiff settled with all defendants except the Parish of East Baton Rouge. Remaining at issue, therefore, was the principal demand against the Parish and the Parish’s third party demand against Amiss, Aucoin and their insurer. After trial, the court rendered judgment in favor of the Parish, dismissing plaintiff’s suit. The Parish’s third party demand was, accordingly, dismissed.
*366 The sole issue presented and argued on appeal, apparently not raised in the trial court, is whether or not strict liability can be imposed upon the Parish under article 2322 of Civil Code.[1] Article 2322 provides: “The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.”
Plaintiff argues the failure of the security system was a “ruin” within the contemplation of article 2322. He contends, even assuming the initial construction of the security system was satisfactory, the Parish owed a duty under article 2322 to maintain it and, failing to do so, is strictly liable.
The plaintiff alleged that on the evening of the incidents the other inmates forced him to fight the inmate with whom he shared the day room and, as punishment for losing the fight, then forced him to perform oral sex on this same person. According to plaintiff, after “lights out” ten prisoners left their cells, one right after the other, and each singly by threats of violence forced him to engage in various sexual acts. It was not until several hours later, in the early morning of September 23, that plaintiff saw a guard and was able to report the incident. Plaintiff was removed from the cellblock and taken to the hospital area of the prison where he spent a week and was then released on bond. Bills of information were filed against the ten inmates and at least four of them pled guilty to the charge of crime against nature and were sentenced accordingly.
We find plaintiff’s argument concerning article 2322 to be without merit and totally inapplicable to this situation. First of all, plaintiff has not proven by a preponderance of the evidence that a “ruin” existed. He alleged the automatic locking mechanism on the individual cell doors failed, but offered no actual evidence to support this argument. It is true the prisoners managed to get out of their cells but the evidence indicates it is likely they did so by somehow jamming the locks so that although the control panel read “locked” the doors were in fact unlocked. This is not so much a failure of the locking system or a ruin of the building as it is an intervention by the prisoners to “prevent” the locks from working. In effect, the inmates beat the system.
Secondly, assuming arguendo that plaintiff has proven the locks were in disrepair and constituted a “ruin” of the building, we are not aware of any case under article 2322 in which the “ruin” is only indirectly related to the plaintiffs injury as is the situation in this case. In the case cited by appellant, Olsen v. Shell Oil Co., 365 So.2d 1285 (La.1978), rehearing denied and correction made, 1979, a water heater on a fixed platform exploded, injuring and killing many workers. The Olsen case illustrates the typical situation where a part of the building does direct physical damage to the plaintiff.
In the present case however, the alleged “ruin,” the insufficient locking system, did not directly harm the plaintiff. It is true the locking system allowed the inmates to leave their cells, and the inmates harmed the plaintiff, but we do not think article 2322 can be logically applied to this situation. The article was obviously designed to protect innocent persons from the physical harm they might receive as a direct result of the ruin of a building. We can only imagine the scope of liability that would occur if we were to apply this article to every case where a defect in a building appeared somewhere in the chain of events. For instance, if a homeowner’s front door lock is defective and an intruder is able to enter the residence, is the homeowner strictly liable under article 2322 for injuries inflicted by the intruder upon a houseguest? We think any liability in such a ease is logically based upon negligence of the *367 homeowner rather than upon strict liability under article 2322.
We conclude article 2322 is simply not applicable to this situation. Any possible liability on the part of the Parish must be based upon negligence rather than upon this article.
For the foregoing reasons, we affirm the judgment of the trial court. All costs are assessed against the plaintiff.
AFFIRMED.

. The trial court decided the case on the issue of negligence, holding the successful jamming of cell locks by inmates did not constitute negligence on behalf of the Parish. Also, due to the Parish’s third party demand against the prison officials seeking indemnification or, alternatively, contribution, the trial court had before it much evidence relating to whether or not there was actionable negligence on the part of the prison officials.